# McCusker, Anselmi, Rosen, Carvelli & Walsh

A PROFESSIONAL CORPORATION
COUNSELLORS AT LAW
127 MAIN STREET, CHATHAM, NEW JERSEY 07928
TEL: (973) 635-6300  FACSIMILE: (973) 635-7044
Writer's Direct Dial: (973) 457-0124
e-mail: sturchio@marcw.com
Website: www.marcw.com

JOHN B. McCUSKER
ANDREW E. ANSELMI
BRUCE S. ROSEN
PAUL F. CARVELLI
JOSEPH T. WALSH, III
JONATHAN T.K. COHEN
_____
JOHN F. TULLY
　　　Special Counsel
_____
AMY C. GROSSMAN
SUZANNE M. MURPHY
ROSEMARIE DASILVA
　　　Of Counsel

MARITZA BERDOTE BYRNE
PAUL G. McCUSKER
MICHAEL T. MILLAR
WENDY B. GREEN
JAMES A. MESZAROS
GENEROSA CHIRICHIELLO
ALICYN B. CRAIG
EDWARD A. STURCHIO, JR.
MAURA W. SOMMER
ALICE M. SHANAHAN
BRIANA A. PERRY
CATHERINE M. CAMPBELL
LORI A. JORDAN
GEORGE W. CRIMMINS

June 27, 2005

**Via Electronic Filing**
Clerk of the U.S. District Court
M.L. King, Jr. Federal Bldg. & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

> Re: **Yantai North Andre Juice Co., Ltd., et al. v. Arthur Kupperman, et al.**
> **Civil Action No. 05-1049 (WJM)**
> **RE-FILING OF MOTION**
> **HEARING DATE JULY 25, 2005**

Dear Sir or Madam:

On behalf of plaintiffs, Yantai North Andre Juice Co., Ltd. and Yantai North Andre Juice, Inc., enclosed please find a Notice of Motion, Declaration of Titus Yung, Memorandum of Law, and Proposed Form of Order in the above-referenced matter. This motion was originally filed on or about June 10, 2005 under Appendix N practice. As I have been informed that the Court no longer utilizes Appendix N procedures, **Judge Martini's chambers has set the return date of the motion for July 25, 2005.** Thank you for your attention in this matter. Should you have any questions, please do not hesitate to contact me.

Very truly yours,

EDWARD A. STURCHIO, JR.

EAS:rmd
Enclosures
cc: Andrew E. Anselmi, Esq.

New York City Office:  156 West 56th Street, Suite 1702, New York, New York 10019, Tel.: (212) 308-0070, Facsimile: (212) 386-7280
Toms River Office:  98 East Water Street, Toms River, New Jersey 08753, Tel.: (732) 914-9114, Facsimile: (732) 914-8024

Andrew E. Anselmi, Esq. (AA 1768)
**McCUSKER, ANSELMI, ROSEN,**
   **CARVELLI & WALSH, P.A.**
127 Main Street
Chatham, New Jersey 07928
(973) 635-6300
Attorneys for Plaintiffs,
Yantai North Andre Juice, Co., Ltd. and
Yantai North Andre Juice, Inc.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| YANTAI NORTH ANDRE JUICE CO., LTD. and YANTAI NORTH ANDRE JUICE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ARTHUR KUPPERMAN, PAULETTE KRELMAN, E. ROSS BROWNE, SR.; PGB INTERNATIONAL, f/k/a and/or a/k/a PITTRA INTERNATIONAL, f/k/a and/or a/k/a PITTRA-CAMERICAN f/k/a and/or a/k/a, PITTRA, INC., G.B INTERNATIONAL, XYZ CORPORATIONS 1-10, and JOHN DOES 1-10, <br><br> Defendants. | Civil Action No. 05-1049 (WJM) <br><br> **FILED ELECTRONICALLY** |

---

## MEMORANDUM OF LAW OF PLAINTIFFS, YANTAI NORTH ANDRE JUICE CO., LTD. AND YANTAI NORTH ANDRE JUICE, INC., IN SUPPORT OF THEIR MOTION TO DISMISS PITTRA'S COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 56

---

Of Counsel:
   Andrew E. Anselmi, Esq.

On the Brief:

   Andrew E. Anselmi, Esq.
   Jonathan T.K. Cohen, Esq.
   Edward A. Sturchio, Jr., Esq.

Dated: June 10, 2005

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 4

LEGAL ARGUMENT ....................................................................................................... 11

Point I
YANTAI IS ENTITLED TO DISMISSAL OF PITTRA'S
COUNTERCLAIMS DUE TO BY RES JUDICATA ....................................................... 12

Point II
PITTRA'S COUNTERCLAIMS ARE PRECLUDED AS
COMPULSORY COUNTERCLAIMS BY FED.R.CIV.P.13
AND NEW JERSEY'S ENTIRE CONTROVERSY DOCTRINE ................................... 15

    A.    New Jersey's Entire Controversy Doctrine Bars Pittra's Counterclaims .............. 15

    B.    Fed.R.Civ. 13 Bars Pittra's Counterclaims as Compulsory
        Counterclaims Omitted From the Parties' Prior Litigation .................................. 17

Point III
THE TERMS OF THREE FORBEARANCE AGREEMENTS
EXECUTED IN CONNECTION WITH YANTAI'S 2002 COMPLAINT
PRECLUDE PITTRA FROM ASSERTING NEW CLAIMS ......................................... 19

Point IV
YANTI'S MOTION COMPLIES WITH THE REQUIREMENTS
FOR GRANTING SUMMARY JUDGMENT AND FOR
DISMISSING PITTRA'S COUNTERCLAIMS ............................................................... 21

    A.    The Instant Motion Is Properly Brought Pursuant To Fed.R.Civ.P. 56 ............ 21

    B.    The Summary Judgment Standard ...................................................................... 21

CONCLUSION .................................................................................................................. 24

# TABLE OF AUTHORITIES

## FEDERAL CASES

106 S.Ct. 2505 ...........................................................................................................23

*Anderson*, 477 U.S. at 249 .......................................................................................23

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed2d 265
(1986)..........................................................................................................................21

*Churchill v. Star Enterprises*, 183 F.3d 368 (3rd Cir. 1999) ...............................13

*Erie R. Co. v. Tompkins*, 304 U.S. 64, 59 S.Ct. 817, (1938) ...............................13

*Houbigant, Inc. v. federal Insurance Co.*, 374 F.3d 192 (3rd Cir. 2004) .....................12,17

*Milligan v. Century Exteriors, Inc., et al.*, 2005 WL 1229791 (D.N.J. 2005)..............21

*Paramount Aviation Corp. v. Agusta*, 178 F.3d 132,137,138,142 (3rd Cir. 1999)... 12,16-18

*Semtek International Inc. v. Lockheed Martin Corp., et al.*, 531 U.S. 497, 121
S.Ct. 1021,1028-1029 [149, L.Ed.2d 32] (2001)............................................................12,17

*Sutton v. Sutton*, 71 F.Supp.2d 383,389-390 (D.N.J. 1999)..................................13,16,18,23

*Total Packaging Corp. v. Tenneco Packaging Corp.*, 2004 WL 758240 (D.N.J.
2004)............................................................................................................................23

*Waldman v. Village of Kiryas Joel*, 207 FR.3d 105, 108 (2nd Cir. 2000)..........................13

## DOCKETED CASES

*Yantai North Andre Juice Co., Ltd., et al. v. Camerican International, Inc., et al.*,
Civil Action No. 2:02cv04767(JWB) ..................................................................................4

## FEDERAL STATUTES

Fed.R.Civ.P. 12................................................................................................................22

Fed.R.Civ.P.13 ................................................................................................2,11,16,17,18,23

Fed.R.Civ.P.56.1..............................................................................................................22

## PRELIMINARY STATEMENT

Plaintiffs Yantai North Andre Juice, Inc. and Yantai North Andre Juice Co., Ltd. (collectively, "Yantai" or "plaintiffs") submit this memorandum of law in support of their motion for summary judgment dismissing the counterclaims of Pittra G.B. International, Inc. The instant Complaint pertains to Yantai's effort to enforce its rights under a $1,169,000 judgment obtained in a prior litigation between the parties. In connection with efforts to enforce its judgment, Plaintiff discovered information leading it to believe that the defendants engaged in various fraudulent transfers of assets intended to render the defendants judgment proof. Plaintiff thus filed its instant Complaint on or about October 1, 2002.

On November 4, 2002, in a prior action, the United States District Court for the District of New Jersey entered a final judgment in favor of Yantai, and against Pittra, Inc., Pittra-Camerican, and Pittra G.B. International, Inc. (collectively, "Pittra"), and others, jointly and severally, in the amount of $1,169,954 (the "November 2002 Judgment"). The November 2002 Judgment was the result of Yantai's complaint filed on or about October 1, 2002 under Civil Action Number 02-4767 (JWB) (the "2002 Complaint"), alleging amounts due and payable with respect to shipments of fruit juice concentrate ordered from Yantai by Pittra, Inc., Pittra-Camerican, Pittra G.B. International, Inc., and others affiliated entities for which Yantai was never paid.

After lengthy meetings and discussions followed the entry of the November 2002 Judgment, three successive forbearance agreements were entered into between Plaintiff and defendant Pittra G. P. International, Inc., and Arthur Kupperman individually, as the principal of that entity. Each of three successive Forbearance Agreements contained a

1

restatement of the judgment's entry, and a re-confirmation of all amounts due under the terms of the November 2002 Judgment. The three successive Forbearance Agreements expressly addressed all potential claims of the parties existing at that time and under the initial litigation.    The Agreements all state that they contained the entire agreement between those parties.

State and federal preclusion law initially bars Pittra's counterclaims because they were never raised in response to Yantai's initial 2002 Complaint, in response to the entry of judgment in November 2002, nor in connection with the three separate Forbearance Agreements. Pursuant to state and federal concepts of res judicata, Pittra is precluded from raising the causes of action contained in its counterclaims. Pittra's counterclaims are also precluded under Fed.R.Civ.P.13 and New Jersey's Entire Controversy Doctrine.

Finally, the express terms of the three Forbearance Agreements alone, which confirmed the defendant's obligations under the November 2002 Judgment, serve to preclude Pittra's counterclaims by demonstrating that there exists no genuine issue of material fact, since defendants counterclaim allegations regarding an alleged 2001 Agreement and an alleged 2002 breach, have been precluded or waived by these three successive agreements. The first two forbearance agreements specifically enumerated certain very limited potential offsets and/or claims by Pittra that might reduce the amount owed to Yantai. These documents do not make any reference to an alleged "exclusivity agreement" that has been asserted in the instant counterclaim filed by Pittra Inc. Moreover, the third and final Forbearance Agreement waived a right of the defendants to assert any further offsets or claims reserved by Pittra in the first two agreements, except

2

with respect to certain potential ongoing rights to receive credits on possible commissions earned after July 2003.

Based upon the foregoing, this Court should grant Yantai's motion for summary judgment against all defendants, dismissing their counterclaims with prejudice.

3

## STATEMENT OF FACTS

On November 4, 2002, a Judgment was entered in favor of Yantai against defendants Pittra, Inc., Pittra-Camerican, and Pittra G.B. International, Inc. (collectively, "Pittra"), and others, jointly and severally, in the amount of one million, one hundred sixty-nine thousand, nine hundred fifty-four dollars ($1,169,954.). This Judgment was entered in a matter entitled <u>Yantai North Andre Juice Co., Ltd., et al. v. Camerican International, Inc., et al.</u>, under Civil Action No. 2:02cv04767 (JWB). See Declaration of Titus Yung date June 10, 2005 ("Yung Declaration"), ¶ 3. A copy of the November 4, November 2002 Judgment is annexed to the Yung Declaration as Exhibit A.

The November 2002 Judgment was based on amounts due and payable with respect to shipments of fruit juice concentrate (the "product") ordered from Yantai by Pittra, Inc., Pittra-Camerican, Pittra G.B. International, Inc., and others, for which Yantai was never paid. Yung Declaration, ¶ 4. Prior to the entry of the November 2002 Judgment, or about October 1, 2002, plaintiff Yantai filed a Complaint in the United States District Court for the District of New Jersey, Newark Vicinage, seeking payment for the shipments. Yung Declaration, ¶ 5.

After the November 2002 Judgment was entered, Pittra and its related entities, all of which shared common principal, including Arthur Kupperman ("Kupperman"), engaged in ongoing negotiations with plaintiff in connection with their promise to pay the outstanding Judgment, including a portion of the November 2002 Judgment that would be personal guaranteed by Mr. Kupperman. Yung Declaration, ¶ 6. During the late 2002 negotiations, the defendants were represented by counsel Douglas A. Kent, Esq. Yung Declaration, ¶ 7.

After several weeks of discussions in November and December 2002, a Forbearance Agreement was entered into between plaintiff and defendant Pittra G. P. International, Inc. and Kupperman individually, as the principal of defendant Pittra G.B. Yung Declaration, ¶ 8.   A December 24, 2002 Forbearance Agreement (the "First Forbearance Agreement") contained a re-confirmation by the defendants and Mr. Kupperman individually of all amounts due under the terms of the November 2002 Judgment, namely $1,169,954. Yung Declaration, ¶ 9.

While all amounts due and owing under the November 2002 Judgment were confirmed in the First Forbearance Agreement, the document stated that "possible" offsets and claims by Pittra existed of no more than $50,000 for specification issues for goods received on or before September 30, 2002 and offsets and/or claims of a maximum amount of $100,000 for an accounting dispute regarding Pittra's contention that it overpaid Yantai for some goods obtained for Yantai Ltd. Yung Declaration, ¶ 10.   The First Forbearance Agreement stated that any possible offsets that were reserved by Pittra and Kupperman needed to be determined within 20 days of the Agreement.   Yung Declaration, ¶ 11.   A copy of the First Forbearance Agreement is annexed to the Yung Declaration as Exhibit B.

Between the date of the First Forbearance Agreement, December 24, 2002, and April 25, 2003, Pittra and Kupperman made various payments toward satisfaction of the November 2002 Judgment pursuant to the terms of the First Forbearance Agreement. Yung Declaration, ¶ 12.

On or about April 25, 2003 a Second Forbearance Agreement was executed between Yantai, Pittra and Kupperman individually (the "Second

5

Forbearance Agreement"). Yung Declaration, ¶ 13. A copy of the Second Forbearance Agreement is annexed to the Yung Declaration as Exhibit C. Pittra and Kupperman were again represented by counsel in connection with the execution of the Second Forbearance Agreement. Yung Declaration, ¶ 14.

The Second Forbearance Agreement again reaffirmed that all amounts due under the Judgment of November 2002 were due and valid, with the exception of certain slight clarifications set forth in the Second Forbearance Agreement. Yung Declaration, ¶ 15.

The Second Forbearance Agreement confirmed a history of various payments under the November 2002 Judgment, and reconfirmed that as of April 22, 2003, Pittra owed Yantai the sum of $732,238.11. Yung Declaration, ¶ 16.

The Second Forbearance Agreement confirmed that Pittra no longer had the right to reserve any credit or offsets of up to $50,000 or $100,000, as stated in connection with the First Forbearance Agreement. Yung Declaration, ¶ 17. The Second Forbearance Agreement contained one provision that committed Yantai and Pittra to work out issues regarding possible adjustments in connection with Pittra's claim that certain goods shipped out after September 30, 2002 did not meet certain specifications. Yung Declaration, ¶ 18.

The Second Forbearance Agreement reconfirmed the debts of Pittra under the November 2002 Judgment, while requiring additional forbearance of conduct by Yantai for a short time after April 25, 2003. Yung Declaration, ¶ 19. On or about July 16, 2003, a Third Forbearance Agreement was executed between the same parties as the First and Second Forbearance Agreements (the "Third Forbearance

6

Agreement"). Yung Declaration, ¶ 20. A copy of the Third Forbearance Agreement is annexed to the Yung Declaration as Exhibit D.

The Third Forbearance Agreement again reconfirmed the debts owed by Pittra to Yantai, as initially required under the terms of the November 2002 Judgment, as adjusted based on various additional payments made subsequent to entry of the Judgment. Yung Declaration, ¶ 21.

The Third Forbearance Agreement confirmed that as of July 10, 2003 Pittra owed Yantai the sum of $662,238.11, less possible commissions that might be due Pittra, but collected by Yantai, after April 22, 2003. Yung Declaration, ¶ 22. The Third Forbearance Agreement further stated that Yantai "will continue to give credit against the Debt to Pittra for all set off commissions that would otherwise be due by Yantai, Ltd. to Pittra when they become due." Yung Declaration, ¶ 23.

Paragraph 10 of the Third Forbearance Agreement specifically stated that Pittra "waives all rights and claims that were previously reserved under the first and Second Forbearance Agreements; provided that Pittra reserves the right to a full accounting from Yantai as to all payments made by Pittra to Yantai and the application of commissions earned by Pittra on sales made by Yantai." Yung Declaration, ¶ 24.

Under the terms of the Third Forbearance Agreement, any claim by Pittra against Yantai for allegedly unpaid commissions since July 2003 is necessarily limited to a reduction of the amount owed, not an affirmative claim such as breach of contract, tortuous interference with prospective economic advantage, or a claim under the Franchise Practices Act. Yung Declaration, ¶ 25. Pittra reserved no right to bring

7

the foregoing affirmative claims under the Third Forbearance Agreement. Its sole reservation was as to a credit or offset against the amount it owed to Yantai. Yung Declaration, ¶ 26.

The Third Forbearance Agreement stated that "except as otherwise provided herein, this Third Forbearance Agreement contains the entire agreement between Yantai Ltd., Yantai Inc. and Pittra, relating to the claims set forth in the Complaint filed in the Action any prior discussions, negotiations, and understandings relating to the Forbearance of Yantai, Ltd. and Yantai Inc. regarding it's claims against Pittra and any prior discussions, negotiations, and understandings related to these matters are hereby merged into this Agreement". Yung Declaration, ¶ 27.

The Third Forbearance Agreement confirmed that the parties all agreed to the stipulated background section of the Third Forbearance Agreement, including sections that reconfirmed that the November 2002 Judgment was validly entered against Pittra for $1,169,952 Yung Declaration, ¶ 28.

The 2002 terms of the Third Forbearance Agreement conclusively demonstrate that the substantive assertion in the counterclaim of Pittra are in fact not allowed under the terms of the Third Forbearance Agreement and in fact would violate the provisions of a Third Forbearance Agreement that specifically state that no other negotiations, Agreements, understandings, or any other claims etc, were possible, except for the rights and claims set forth specifically in the Third Forbearance Agreement. Yung Declaration, ¶ 29.

Despite execution of the forbearance agreements, the parties obligated under those forbearance agreements have failed and refused to satisfy all obligations

required under the payment schedule. There remain substantial financial obligations owed to Yantai by defendants, as set forth in the complaint. The outstanding debt amounts to approximately $600,000. Yung Declaration, ¶ 30.

Based upon the remaining obligations owed to Yantai under the November 2002 Judgment, Yantai continued collection efforts by serving various discovery requests on Pittra. Yung Declaration, ¶ 31. On or about April 6, 2004, Yantai served a Notice to take Oral Deposition with annexed Document Demands upon Pittra G.B International. Yung Declaration, ¶ 32. From the discovery produce by Pittra in response to its discovery requests, it appeared that Kupperman proposed to wind down Pittra through an orderly liquidation, sell all of Pittra's assets to a new entity, PGB International Inc., which will also to be controlled by Pittra's principal, Mr. Kupperman, and will be conducting the same business activities. Yung Declaration, ¶ 33. In response to this information, Yantai initiated the instant action by filing its Complaint on or about February 16, 2005. Yung Declaration, ¶ 34.

Defendants' Counterclaims are now being asserted for the first time, in violation of the terms of the November 2002 Judgment, as well as the, First, Second, and Third Forbearance Agreements. Yung Declaration, ¶ 35. Defendant Pittra alleges that Yantai entered into an exclusivity Agreement in 2001, well before the institution of Yantai's initial litigation in October 2002, which resulted in the November 2002 Judgment in Yantai's favor. Yung Declaration, ¶ 36.

Defendant's counterclaims further allege that Yantai breached said alleged exclusivity agreement in 2002, prior to the date of the November 2002 Judgment, and the First, Second, and Third Forbearance Agreements. Yung Declaration, ¶ 37.

In executing the three (3) Forbearance Agreements, Pittra never reserved any rights or claims under the alleged Exclusivity Agreement. Yung Declaration, ¶ 38. The President of Pittra, Arthur Kupperman, personally guaranteed certain payments under the three Forbearance Agreements, as recited by the language of the Third Forbearance Agreement. Yung Declaration, ¶ 39.

The Second and Third Forbearance Agreements were certainly signed after the time when defendants now allege Yantai breached the alleged exclusivity Agreement. Yung Declaration, ¶ 40. Despite conceding in the three Forbearance Agreements that they were indebted to Yantai, in the amounts specified in the documents, defendants have now raised the issues presented in their counterclaims for the first time in response to a Second litigation filed to address allege fraudulent transfers and other fraudulent conduct of defendants. Yung Declaration, ¶ 40.

Among the stipulated background facts contained in the Forbearance Agreements, Pittra stipulated that there existed no other "set-offs and/or claims" beyond a maximum possible amount of $50,000 related to possible "specification issues" an/or a possible "accounting dispute." Yung Declaration, ¶ 41.

Yantai's initial litigation the same subject area that is now addressed by defendants' counterclaims. Yung Declaration, ¶ 42.

Yantai's 2002 Complaint addressed shipments to and payments due from defendants through July 2002. and asserted as of October 1, 2002. The ongoing business interactions between Yantai and defendants, as well as any potential payments owed to or by each side, were central issues to that litigation. Yung Declaration, ¶ 43.

10

Each Forbearance Agreement specifically addressed potential claims for money damages owed to and from each of the respective parties to the Agreement. Yung Declaration, ¶ 44. Defendants never raised any counterclaims for a breach of an alleged exclusivity agreement in response to the prior Complaint. Yung Declaration, ¶ 45.

## LEGAL ARGUMENT

State and federal preclusion law, the entry of the November 2002 Judgment, and execution of three Forbearance Agreements, all serve to bar Pittra's instant counterclaims. The counterclaims should initially be barred as res judicata. In its 2002 Complaint, Yantai enumerated that it was owed $1,169,954 by Pittra and others. Yantai's claims were verified by the November 2002 Judgment, which was never challenged. The defendant's obligations under the November 2002 Judgment were repeatedly conceded and re-affirmed by the present counterclaimant, Pittra.

The November 2002 Judgment, and the three separate Forbearance Agreements, resolved the entire prior litigation between the parties, and encompassed all claims asserted therein, with a few limited exceptions that were carefully defined. Pittra and its principal, Arthur Kupperman, also began to make payments in partial satisfaction of the November 2002 Judgment and in accordance with the three Forbearance Agreements.

The Third Forbearance Agreement, which superseded the prior two, re-affirmed the fact that the instant counterclaim must be barred as a matter of law. Fed.R.Civ.P.13 and New Jersey's entire controversy doctrine prevent Pittra from asserting its counterclaims in the instant action because it failed to raise its instant claims in the parties' prior litigation concerning the same series of events. Pittra asserted no claims or defenses against Yantai in the initial action, despite ample time between the alleged

11

breach and the execution of three Forbearance Agreements, that expressly contemplate any claims of Pittra against the entry of the November 2002 Judgment, ongoing post-judgment meetings and negotiations. At best, Pittra may have a right under the Third Forbearance Agreement to demand an accounting as to the amounts under the Judgment. A right to an accounting, however, does not constitute a valid counterclaim.

## Point I

### YANTAI IS ENTITLED TO DISMISSAL OF PITTRA'S COUNTERCLAIMS DUE TO RES JUDICATA

Applying either state or federal preclusion law, the instant counterclaim that Pittra now seeks to assert, never raised in response to Yantai's initial 2002 Complaint, or in connection with three separate Forbearance Agreements, is barred on multiple grounds. Under state and federal concepts of res judicata, Pittra should be precluded from raising the causes of action contained in its counterclaims.

Federal common law generally governs the claim preclusion analysis of a federal court sitting in diversity. Semtek International Inc. v. Lockheed Martin Corp., et al., 531 U.S. 497, 508, 121 S.Ct. 1021, 1028, 149, L.Ed.2d 32 (2001); Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 139 (3rd Cir. 1999). The appropriate rule to be applied in this situation is the law that applies to the state court in the State in which the federal diversity court sits. Semtek, 531 U.S. at 508, 121 S.Ct. at 1028; Houbigant, Inc. v. federal Insurance Co., 374 F.3d 192 (3rd Cir. 2004). This rule of general application avoids the potential for substantial variations in outcomes between state and federal litigation or from 'forum shopping' so loathed by the courts Erie R. Co. v. Tompkins, 304 U.S. 64, 78-80, 59 S.Ct. 817, 82 L.Ed. 1188 (1938).

12

Res judicata would make a final, valid judgment conclusive on the parties, and those in privity with them, as to all matters of fact and law.  Waldman v. Village of Kiryas Joel, 207 FR.3d 105, 108 (2nd Cir. 2000).  This prevents piecemeal litigation of claims arising from the same nucleus of operative facts.  Churchill v. Star Enters, 183 F.3d 368, 372 (3rd Cir. 1999).  Effectively, "res judicata prohibits a party from reopening and relitigating issues that were or could have been decided in a previous case involving the same parties arising out of the same transaction. Sutton, 71 F.Supp.2d at 389.

Both federal and New Jersey res judicata doctrines are virtually identical. Sutton v. Sutton, 71 F.Supp.2d 383, 389 (D.N.J. 1999) (analyzing matter under both state and federal preclusion doctrines of res judicata).  New Jersey and federal claim preclusion have been likened as follows:

> There are three elements to [federal] claim preclusion: "(1) a final judgment on the merits in a prior suit involving (2) the same claim and (3) the same parties or their privities....New Jersey courts apply essentially the same analysis for res judicata: (1) the Judgment in the prior action must be valid, final, and on the merits; (2) the parties in the prior action must be identical or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the earlier one.

Sutton, 71 F.Supp.2d at 389-390 (citations omitted and additions added).

Applying either state or federal preclusion concepts, the counterclaims that Pittra now seeks to assert are barred as res judicata. Although the November 2002 Judgment of Yantai was initially entered by default, the defendants thereafter confirmed and accepted their obligations under the 2002 Judgment in several written documents, thus treating  the 2002 Judgment as the equivalent of a judgment on the merits, to the extent it was not already.  Under the terms of each Forbearance Agreement, Pittra and its principal, Arthur Kupperman, repeatedly acknowledged the precise obligation owed under the Judgment.

13

Rather than challenge the November 2002 Judgment, the defendants admitted their obligations under the Judgment in each of the three Forbearance Agreement with the advice and assistance of counsel with respect to each Agreement.

The Defendants also made multiple payments in accordance with the November 2002 Judgment, and the First and Second Forbearance Agreements. Yantai's 2002 Complaint addressed shipments to and payments due from Pittra through July 2002. The Complaint addressed the relationships and issues now addressed in Pittra's Counterclaim. The ongoing business interactions between Yantai and Pittra, as well as potential credits or debits owed to or by each side, were central issues to the prior litigation.

The proper forum for Pittra's claims were in the original suit. The three (3) Forbearance Agreements reconfirmed the substantive validity of the November 2002 Judgment, subject to limited clarifications. All three Forbearance Agreements constituted the parties' "entire agreement" with respect to the initial litigation and the parties' respective rights under the 2002 Judgment. The First Forbearance Agreement was negotiated over the course of several weeks, immediately following the entry of the November 2002 Judgment. It specifically addresses potential claims for money damages owed to and from each of the respective parties to the agreement.

Pittra now contends that it entered into an exclusivity agreement with Yantai in 2001. It now contends, in conclusory fashion only, that Yantai breached an alleged exclusivity agreement in 2002. It now alleges that this breach entitles Pittra to offset its obligations under the 2002 Judgment. Pittra, however, never raised any of these new allegations in the 2002 litigation, nor during the negotiations or execution of the three separate Forbearance Agreements between December 2002 and July 2003. Moreover,

14

Pittra and Kupperman, who had personally guaranteed $80,000 of the debt in the First

Forbearance Agreement , re-affirmed their obligation to Yantai under the November 2002

Judgment, and Pittra and Kupperman made multiple payments on the confirmed and

reconfirmed obligation.

The Third Forbearance Agreement entered into by the parties further

encompassed all claims of the parties existing as of July 2003. As noted above, Pittra

waived any right by the defendants to assert any other set-offs that might reduce then

pending amount due under the Judgment, except with respect to issues of accounting and

possible commission credits earned after July 16, 2003.

If Pittra had additional claims that could reduce the amount owed to Yantai, such

as claims under an alleged "exclusivity agreement", it should have raised them either (1)

in response to the original complaint, (2) in a motion to vacate the 2002 Judgment, or (3)

in claims made prior to or contemporaneous with its execution of three separate

Forbearance Agreements between December 2002 and July 2003 that re-affirmed the

defendants obligations under the 2002 Judgment.

**Point II**

**PITTRA'S COUNTERCLAIMS ARE PRECLUDED AS COMPULSORY
COUNTERCLAIMS BY FED.R.CIV.P.13 AND NEW JERSEY'S
ENTIRE CONTROVERSY DOCTRINE**

Based upon Pittra's failure to previously raise the issues addressed by its

counterclaim in the parties' original litigation, those claims are further barred by state and

federal compulsory counterclaim requirements under Fed.R.Civ.P.13 and New Jersey's

entire controversy doctrine.

**A.    New Jersey's Entire Controversy Doctrine Bars Pittra's Counterclaims**

15

New Jersey preclusion law contains an additional theory that bars Pittra's counterclaims, the entire controversy doctrine. New Jersey's entire controversy doctrine "encompasses traditional concepts of claims and joinder as well as party joinder..." Sutton, 71 F.Supp.2d at 390 (citing Fornaroto v. American Waterworks Co., Inc., 144 F.3d 276, 278 (3rd Cir. 1998)).    The Third Circuit has described the affirmative defense engendered by the entire controversy doctrine as follows:

> The fundamental principle behind the inclusion of the entire controversy doctrine is that the adjudication of a legal controversy should occur in one litigation in one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy

Id. (citation omitted). Under the entire controversy doctrine, a party cannot "withhold part of a controversy for separate later litigation even when the withheld component is a separate and independently cognizable cause of action." Paramount, 178 F.3d at 137. New Jersey's entire controversy doctrine serves three goals: (1) complete and final disposition of cases through avoidance of piecemeal decisions, (2) fairness to parties to an action and to others with a material interest in it, and (3) efficiency and avoidance of waste and delay. Id.

It is clear that Pittra now seeks to interpose a counterclaim that is sufficiently related to that of the first action, "as all arose from the same 'series of events'" Total Packaging Corp. v. Tenneco Packaging Corp., 2004 WL 758240 (D.N.J. 2004).    The same defendants or their privities have been named in both litigations. Id. As in Total Packaging, Yantai will likely rely upon documents related to the parties' other action,

16

particularly the same contractual-related transactions and the same Forbearance
Agreements referenced repeatedly herein.

Pittra had ample opportunity to assert opposing claims against Yantai, or even
answer Yantai's initial complaint, in the fall of 2002. Instead of defending the first suit,
Pittra asserted no defenses or counterclaims against Yantai in that suit. Instead, Pittra
chose to not answer Yantai's 2002 Complaint and to then concede Yantai's judgment and
claims in three successive Forbearance Agreements, qualified only by certain limited
exceptions that were largely resolved by the Third Forbearance Agreement. After the
November 2002 Judgment was entered, Pittra and Kupperman repeatedly acknowledged
the debt under the November 2002 Judgment, and began paying down the amount due.

**B.    Fed.R.Civ.P. 13 Bars Pittra's Counterclaims as Compulsory
Counterclaims Omitted From the Parties' Prior Litigation**

In a diversity action, the forum state's preclusion rules are applied. However,
where "the state law is incompatible with federal interests...federal courts' interest in the
integrity of their own processes might justify a contrary rule." Semtek, 531 U.S. at 509,
121 S.Ct. at 1028-1029; Houbigant, 374 F.3d at 205; Paramount, 178 F.3d at 138.

At least one court has held that relevant federal interests warranting the
application of a contrary federal rule are embodied in Fed.R.Civ.P.13. Paramount, 178
F.3d at 138. Fed.R.Civ.P.13 states:

> **Compulsory Counterclaims.** A pleading shall state as a
> counterclaim any claim which at the time of serving the pleading the
> pleader has against any opposing party, if it arises out of the
> transaction or occurrence that is the subject matter of the opposing
> party's claim and does not require for its adjudication the presence
> of third parties of whom the court cannot acquire jurisdiction. But
> the pleader need not state the claim if (1) at the time the action was
> commenced the claim was the subject of another pending action, or
> (2) the opposing party brought suit upon the claim by attachment or

17

> other process by which the court did not acquire jurisdiction to
> render a personal judgment on that claim, and the pleader is not
> stating any counterclaim under this Rule 13.

Fed.R.Civ.P.13.

Federal courts have a significant interest in determining the preclusive effects of their own judgments. Id. In Paramount, the court concluded that applying this federal rule "would also give effect to the joinder rules of the Federal Rules of Civil Procedure, which define the claims that parties must join if they are not to be later barred." Paramount, 178 F.3d at 145. Ultimately, the Paramount court concluded that "respecting courts' power to determine the preclusive effect of their own rulings is a significant federal interest." Paramount, 178 F.3d at 145.

Preclusion law not only seeks to bar relitigation of issues already determined, but also those that "should have been determined." Sutton, 71 F.Supp.2d at 389; Waldman, 207 FR.3d at 108. Pittra never raised any claims for a breach of an alleged exclusivity agreement in the first suit, nor in multiple subsequent Forbearance Agreements that were executed in connection with ongoing enforcement and settlement negotiations related to the 2002 Judgment. Pittra made no allegations of potential claims for monies owed from such an alleged agreement at any time prior to Yantai's filing of its instant fraud and fraudulent transfer litigation.

Pittra should not be granted a right to circumvent the finality and preclusive effect of this Court's prior November 2002 Judgment and the related Forbearance Agreements because it chose not to assert its counterclaims in the initial action or in the related three Forbearance Agreements.

### Point III

### THE TERMS OF THREE FORBEARANCE AGREEMENTS
### EXECUTED IN CONNECTION WITH YANTAI'S 2002 COMPLAINT
### PRECLUDE PITTRA FROM ASSERTING NEW CLAIMS

In addition to being precluded by doctrines of res judicata claim, preclusion, and
entire controversy, Pittra's counterclaims, asserted for the very first time, are barred by
the terms of the three (3) Forbearance Agreements entered into in connection with
Yantai's 2002 Complaint. Pittra contends that it entered into an exclusivity agreement
with Yantai in 2001, and that Yantai breached said alleged exclusivity agreement in
2002.

After the November 2002 Judgment was entered and Pittra sought to have Yantai
forbear from certain collection efforts, Pittra expressly acknowledged the existence and
amount of debt owed to Yantai in each of the three (3) Forbearance Agreements. The
Forbearance Agreements were signed after the time when Pittra alleges Yantai breached
an alleged exclusivity agreement. The proper forum for Pittra's new alleged claims was
in the original suit, and in connection with each of the three separate Forbearance
Agreements.

Among the stipulated facts contained in the Forbearance Agreements, Pittra
agreed that there existed no other "set-offs and/or claims" beyond a maximum possible
amount of $150,000 related to possible "specification issues" an/or a possible
"accounting dispute." The Third Forbearance Agreement, however, confirmed that these
possible prior set-offs were resolved. It stated, in part:

> Pittra waives all rights and claims it previously reserved under the
> First and Second Agreements; provided that Pittra reserves the right
> to a full accounting from Yantai as to all payments made by Pittra to
> Yantai and the application of all commissions earned by Pittra on

19

sales made by Yantai Ltd. to Country Pure, Knouse, and Clemente
Pappas. Except as otherwise provided herein, Yantai reserves all of
its rights against Pittra.

The Forbearance Agreements relate to all claims of the parties, and each of them

contained specific stipulated background provisions, detailing the amount of monies

owed by Pittra to Yantai, pursuant to Yantai's rights under the November 2002

Judgment. They constituted the parties' entire agreement with respect to the initial

litigation. Each Agreement stated that they contained:

> the entire Agreement between Yantai Ltd., Yantai Inc., and Pittra
> relating to the claims set forth in the Complaint filed in this action
> and any prior discussions, negotiations, and understandings relating
> to the forbearance of Yantai Ltd. And Yantai Inc. regarding its
> claims against Pittra and any prior discussions, negotiations, and
> understanding relating to these matters are hereby merged into this
> Agreement.

Not one of the three Forbearance Agreements make mention of any claims

relating to an alleged "exclusivity agreement" or Yantai's alleged breach thereof. The

only rights reserved in the Third Forbearance Agreement were related to potential "set off

commissions that would otherwise be due by Yantai, Ltd. to Pittra when they become

due."

Despite conceding in the Forbearance Agreements that it was indebted to Yantai

for amounts owed under the November 2002 Judgment, and that there existed no other

set-offs or claims, except for the right to get credit for potential commissions after July

2003, Pittra has now raised new assertions in its counterclaims in response to a second

suit for fraud and fraudulent transfers. Pittra's counterclaims, if successful, would serve

to negate the validity of the November 2002 Judgment and three separate Forbearance

Agreements. This result would be in complete violation of the black letter of the

Forbearance Agreements.  The language of the Forbearance Agreements thus precludes

the counterclaims from being asserted and justify entry of summary judgment.

## Point IV

## YANTI'S MOTION COMPLIES WITH REQUIREMENTS
## FOR GRANTING SUMMARY JUDGMENT AND FOR
## DISMISSING PITTRA'S COUNTERCLAIMS

### A.     The Instant Motion Is Properly Brought Pursuant To Fed.R.Civ.P. 56

Yantai brings the instant application pursuant to Fed.R.Civ.P. 56.  The text of

The Federal Rules of Civil Procedure provides that if, on a motion made pursuant to

either Rule 12(b)(6) or (c):

> matters outside the pleadings are presented to and not excluded by
> the court, the motion shall be treated as one for summary judgment
> and disposed of as provided in Rule 56, and all parties shall be given
> reasonable opportunity to present all material made pertinent to such
> a motion by Rule 56.

Fed.R.Civ.P. 12 (b) and (c).  A motion for summary judgment under Fed>R.Civ.P.56 is

therefore appropriate.   Accordingly, Yantai has enclosed a Statement of Undisputed

Material Facts, in compliance with Fed.R.Civ.P.56.1.

### B.     The Summary Judgment Standard

The court should grant Yantai's motion for summary judgment (the "motion")

because "the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P.

56(c).  The party moving for summary judgment must demonstrate that there is no

genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct.

2548, 91 L.Ed2d 265 (1986); Milligan v. Century Exteriors, Inc., et al., 2005 WL

1229791 (D.N.J. 2005). Once the moving party has established that no genuine issue of material fact exists, the nonmoving party "must present evidence establishing that a genuine issue of material fact exists, making it necessary to resolve the difference at trial." Id. Rather than assert bald, unsubstantiated allegations, the non-moving party must offer actual evidence raising a genuine issue of material fact. Id.

In deciding the instant summary judgment motion, the district court must view the evidence in the light most favorable to the defendants. Id. The judge's role at this summary judgment stage of this proceeding is not to evaluate the merits of Yantai's claims, but to determine whether there is a genuine issue for trial. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson at 247-48, 106 S.Ct. 2505 (emphasis in original).

Material facts are only those that might affect the outcome of an action under governing law. Id. at 248, 106 S.Ct. 2505. Absent evidence sufficient to permit a jury to return a verdict for the non-moving party, there is no issue for trial, and summary judgment must be granted. Anderson, 477 U.S. at 249; 106 S.Ct. 2505. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. (citations omitted). Under the applicable standards, Yantai's instant motion is uniquely ripe for disposition on summary judgment.

The material facts are undisputed. Yantai has met its initial burden of showing that no genuine issue exists as to whether Pittra's counterclaims are barred under the

terms of the parties' Forbearance Agreements, and/or under state and federal preclusion laws.

Pittra has acknowledged the amounts due under the November 2002 Judgment, and specifically enumerated in the Forbearance Agreements the very limited and potential set-offs that could have been asserted. The claims that Pittra now seeks to interpose are sufficiently related to that of the first action and advise from the same nucleus of operative facts so as to warrant preclusion. Total Packaging Corp. v. Tenneco Packaging Corp., 2004 WL 758240 (D.N.J. 2004). The same parties or their privities are involved in both litigations Sutton, 71 F.Supp.2d at 389-390.

Pittra had an opportunity to bring its present claims in the parties' first suit, as required by the entire controversy doctrine and Fed.R.Civ.P.13. It did not do so. There is no factual or legal basis that Pittra can present that could alter its failure to assert the claims that it now raises in the prior action. Accordingly, this Court should have no difficulty granting Yantai's instant motion for summary judgment as against the defendants' counterclaims. Plaintiffs therefore respectfully request that this Court grant its motion for summary judgment against all defendants dismissing their counterclaims in their entirety.

23

## CONCLUSION

For all of the reasons set forth above, Plaintiff Yantai respectfully requests that the Court grant its motion for summary judgment against defendants' counterclaim, dismissing all four counts of the counterclaims with prejudice.

Respectfully submitted,

ANDREW E. ANSELMI

Andrew E. Anselmi, Esq. (AA 1768)
**McCUSKER, ANSELMI, ROSEN,**
   **CARVELLI & WALSH, P.A.**
127 Main Street
Chatham, New Jersey 07928
(973) 635-6300
Attorneys for Plaintiffs,
Yantai North Andre Juice, Co., Ltd. and
Yantai North Andre Juice, Inc.

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK VICINAGE**

| | |
|---|---|
| YANTAI NORTH ANDRE JUICE CO., LTD. and YANTAI NORTH ANDRE JUICE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ARTHUR KUPPERMAN, PAULETTE KRELMAN, E. ROSS BROWNE, SR.; PGB INTERNATIONAL, f/k/a and/or a/k/a PITTRA G.B. INTERNATIONAL, f/k/a and/or a/k/a PITTRA-CAMERICAN f/k/a and/or a/k/a, PITTRA, INC., G.B INTERNATIONAL, XYZ CORPORATIONS 1-10, and JOHN DOES 1-10, <br><br> Defendants. | Civil Action No. 05-1049 (WJM) <br><br><br> **DECLARATION OF TITUS YUNG** |

      **TITUS YUNG**, of full age, being duly sworn, hereby declares under penalty of perjury as follows:

      1.   I am the Chief Financial Officer of Yantai North Andre Juice Co., Ltd., and the Deputy General Manager of Yantai North Andre Juice Co., Inc. (collectively, "Yanati" or "plaintiffs") in the above-captioned matter. As such, I am fully familiar with the facts and circumstances concerning the within litigation.

      2.   I submit this declaration in support of Yantai's motion for summary judgment dismissing the counterclaims of Pittra G.B. International, Inc.

Yantai's November 2002 Judgment

3.    On November 4, 2002, a Judgment was entered in favor of Yantai against defendants Pittra, Inc., Pittra-Camerican, and Pittra G.B. International, Inc. (collectively, "Pittra"), and others, jointly and severally, in the amount of one million, one hundred sixty-nine thousand, nine hundred fifty-four dollars ($1,169,954.). This Judgment was entered in a matter entitled Yantai North Andre Juice Co., Ltd., et al. v. Camerican International, Inc., et al., under Civil Action No. 2:02cv04767 (JWB). A copy of the November 4, November 2002 Judgment is annexed hereto as Exhibit A.

4.    The November 2002 Judgment was based on amounts due and payable with respect to shipments of fruit juice concentrate (the "product") ordered from Yantai by Pittra, Inc., Pittra-Camerican, Pittra G.B. International, Inc., and others, for which Yantai was never paid.

5.    Prior to the entry of the November 2002 Judgment, or about October 1, 2002, plaintiff Yantai filed a Complaint in the United States District Court for the District of New Jersey, Newark Vicinage, seeking payment for the shipments.

6.    After the November 2002 Judgment was entered, Pittra and its related entities, all of which shared common principal, including Arthur Kupperman ("Kupperman"), engaged in ongoing negotiations with plaintiff in connection with their promise to pay the outstanding Judgment, including a portion of the November 2002 Judgment that would be personal guaranteed by Mr. Kupperman.

7.    During the late 2002 negotiations, the defendants were represented by counsel Douglas A. Kent, Esq.

2

8.    After several weeks of discussions in November and December 2002, a Forbearance Agreement was entered into between plaintiff and defendant Pittra G. P. International, Inc. and Kupperman individually, as the principal of defendant Pittra G.B.

9.    A December 24, 2002 Forbearance Agreement (the "First Forbearance Agreement") contained a re-confirmation by the defendants and Mr. Kupperman individually of all amounts due under the terms of the November 2002 Judgment, namely $1,169,954.

10.    While all amounts due and owing under the November 2002 Judgment were confirmed in the First Forbearance Agreement, the document stated that "possible" offsets and claims by Pittra existed of no more than $50,000 for specification issues for goods received on or before September 30, 2002 and offsets and/or claims of a maximum amount of $100,000 for an accounting dispute regarding Pittra's contention that it overpaid Yantai for some goods obtained for Yantai Ltd.

11.    The First Forbearance Agreement stated that any possible offsets that were reserved by Pittra and Kupperman needed to be determined within 20 days of the Agreement. A copy of the First Forbearance Agreement is annexed hereto as Exhibit B.

12.    Between the date of the First Forbearance Agreement, December 24, 2002, and April 25, 2003, Pittra and Kupperman made various payments toward satisfaction of the November 2002 Judgment pursuant to the terms of the First Forbearance Agreement.

13.    On or about April 25, 2003 a Second Forbearance Agreement was executed between Yantai, Pittra and Kupperman individually (the "Second Forbearance

3

Agreement"). A copy of the Second Forbearance Agreement is annexed hereto as Exhibit C.

14. Pittra and Kupperman were again represented by counsel in connection with the execution of the Second Forbearance Agreement.

15. The Second Forbearance Agreement again reaffirmed that all amounts due under the Judgment of November 2002 were due and valid, with the exception of certain slight clarifications set forth in the Second Forbearance Agreement.

16. The Second Forbearance Agreement confirmed a history of various payments under the November 2002 Judgment, and reconfirmed that as of April 22, 2003, Pittra owed Yantai the sum of $732,238.11.

17. The Second Forbearance Agreement confirmed that Pittra no longer had the right to reserve any credit or offsets of up to $50,000 or $100,000, as stated in connection with the First Forbearance Agreement.

18. The Second Forbearance Agreement contained one provision that committed Yantai and Pittra to work out issues regarding possible adjustments in connection with Pittra's claim that certain goods shipped out after September 30, 2002 did not meet certain specifications.

19. The Second Forbearance Agreement reconfirmed the debts of Pittra under the November 2002 Judgment, while requiring additional forbearance of conduct by Yantai for a short time after April 25, 2003.

20. On or about July 16, 2003, a Third Forbearance Agreement was executed between the same parties as the First and Second Forbearance Agreements (the

4

"Third Forbearance Agreement"). A copy of the Third Forbearance Agreement is annexed hereto as Exhibit D.

21.     The Third Forbearance Agreement again reconfirmed the debts owed by Pittra to Yantai, as initially required under the terms of the November 2002 Judgment, as adjusted based on various additional payments made subsequent to entry of the Judgment.

22.     The Third Forbearance Agreement confirmed that as of July 10, 2003 Pittra owed Yantai the sum of $662,238.11, less possible commissions that might be due Pittra, but collected by Yantai, after April 22, 2003.

23.     The Third Forbearance Agreement further stated that Yantai "will continue to give credit against the Debt to Pittra for all set off commissions that would otherwise be due by Yantai, Ltd. to Pittra when they become due."

24.     Paragraph 10 of the Third Forbearance Agreement specifically stated that Pittra "waives all rights and claims that were previously reserved under the first and Second Forbearance Agreements; provided that Pittra reserves the right to a full accounting from Yantai as to all payments made by Pittra to Yantai and the application of commissions earned by Pittra on sales made by Yantai."

25.     Under the terms of the Third Forbearance Agreement, any claim by Pittra against Yantai for allegedly unpaid commissions since July 2003 is necessarily limited to a reduction of the amount owed, not an affirmative claim such as breach of contract, tortuous interference with prospective economic advantage, or a claim under the Franchise Practices Act.

5

26.     Pittra reserved no right to bring the foregoing affirmative claims under the Third Forbearance Agreement. Its sole reservation was as to a credit or offset against the amount it owed to Yantai.

27.     The Third Forbearance Agreement expressly stated that "except as otherwise provided herein, this Third Forbearance Agreement contains the entire agreement between Yantai Ltd., Yantai Inc. and Pittra, relating to the claims set forth in the Complaint filed in the Action any prior discussions, negotiations, and understandings relating to the Forbearance of Yantai, Ltd. and Yantai Inc. regarding it's claims against Pittra and any prior discussions, negotiations, and understandings related to these matters are hereby merged into this Agreement".

28.     The Third Forbearance Agreement confirmed that the parties all agreed to the stipulated background section of the Third Forbearance Agreement, including sections that reconfirmed that the November 2002 Judgment was validly entered against Pittra for $1,169,952.

29.     The 2002 terms of the Third Forbearance Agreement conclusively demonstrate that the substantive assertion in the counterclaim of Pittra are in fact not allowed under the terms of the Third Forbearance Agreement and in fact would violate the provisions of a Third Forbearance Agreement that specifically state that no other negotiations, Agreements, understandings, or any other claims etc, were possible, except for the rights and claims set forth specifically in the Third Forbearance Agreement.

30.     Despite execution of the forbearance agreements, the parties obligated under those forbearance agreements have failed and refused to satisfy all obligations required under the payment schedule. There remain substantial financial obligations

6

owed to Yantai by defendants, as set forth in the complaint. The outstanding debt amounts to approximately $600,000.

31. Based upon the remaining obligations owed to Yantai under the November 2002 Judgment, Yantai continued collection efforts by serving various discovery requests on Pittra.

32. On or about April 6, 2004, Yantai served a Notice to take Oral Deposition with annexed Document Demands upon Pittra G.B International.

33. From the discovery produce by Pittra in response to its discovery requests, it appeared that Kupperman proposed to wind down Pittra through an orderly liquidation, sell all of Pittra's assets to a new entity, PGB International Inc., which will also to be controlled by Pittra's principal, Mr. Kupperman, and will be conducting the same business activities.

34. In response to this information, Yantai initiated the instant action by filing its Complaint on or about February 16, 2005.

**The Parties' Forbearance Agreements Bar Pittra's Counterclaims**

35. Defendants' Counterclaims are now being asserted for the first time, in violation of the terms of the November 2002 Judgment, as well as the, First, Second, and Third Forbearance Agreements.

36. Defendant Pittra alleges that Yantai entered into an exclusivity Agreement in 2001, well before the institution of Yantai's initial litigation in October 2002, which resulted in the November 2002 Judgment in Yantai's favor.

7

37.    Defendant's counterclaims further allege that Yantai breached said alleged exclusivity agreement in 2002, prior to the date of the November 2002 Judgment, and the First, Second, and Third Forbearance Agreements.

38.    In executing the three (3) Forbearance Agreements, Pittra never reserved any rights or claims under the alleged Exclusivity Agreement.

39.    The President of Pittra, Arthur Kupperman, personally guaranteed certain payments under the three Forbearance Agreements, as recited by the language of the Third Forbearance Agreement. .

40.    The Second and Third Forbearance Agreements were certainly signed after the time when defendants now allege Yantai breached the alleged exclusivity Agreement.  Despite conceding in the three Forbearance Agreements that they were indebted to Yantai, in the amounts specified in the documents, defendants have now raised the issues presented in their counterclaims for the first time in response to a Second litigation filed to address allege fraudulent transfers and other fraudulent conduct of defendants.

41.    Among the stipulated background facts contained in the Forbearance Agreements, Pittra stipulated that there existed no other "set-offs and/or claims" beyond a maximum possible amount of $50,000 related to possible "specification issues" an/or a possible "accounting dispute."

**The Parties' Prior Litigation Precludes Pittra's Newly Asserted Counterclaims**

42.    Yantai's initial litigation the same subject area that is now addressed by defendants' counterclaims.

43. Yantai's 2002 Complaint addressed shipments to and payments due from defendants through July 2002 and asserted as of October 1, 2002. The ongoing business interactions between Yantai and defendants, as well as any potential payments owed to or by each side, were central issues to that litigation.

44. Each Forbearance Agreement specifically addressed potential claims for money damages owed to and from each of the respective parties to the Agreement.

45. Defendants never raised any counterclaims for a breach of an alleged exclusivity agreement in response to the prior Complaint.

46. I hereby declare under penalty of perjury that the foregoing statements made by me are true to the best of my knowledge.

Dated: JUNE 10, 2005

Titus Yung

9

Andrew E. Anselmi, Esq. (AA 1768)
**McCUSKER, ANSELMI, ROSEN,**
   **CARVELLI & WALSH, P.A.**
127 Main Street
Chatham, New Jersey 07928
(973) 635-6300
Attorneys for Plaintiffs,
Yantai North Andre Juice, Co., Ltd. and
Yantai North Andre Juice, Inc.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
NEWARK VICINAGE

| | |
|---|---|
| YANTAI NORTH ANDRE JUICE CO., LTD. and<br>YANTAI NORTH ANDRE JUICE, INC.,<br><br>         Plaintiffs,<br><br>         v.<br><br>ARTHUR KUPPERMAN, PAULETTE KRELMAN,<br>E. ROSS BROWNE, SR.; PGB INTERNATIONAL,<br>f/k/a and/or a/k/a PITTRA G.B. INTERNATIONAL,<br>f/k/a and/or a/k/a PITTRA-CAMERICAN f/k/a and/or<br>a/k/a, PITTRA, INC., G.B INTERNATIONAL, XYZ<br>CORPORATIONS 1-10, and JOHN DOES 1-10,<br><br>         Defendants. | Civil Action No. 05-1049 (WJM)<br><br>**NOTICE OF MOTION**<br>**FOR SUMMARY JUDGMENT**<br>**DISMISSING COUNTERCLAIMS** |

     **PLEASE TAKE NOTICE** that on July 25, 2005 at 9:00 a.m. or as soon thereafter as

counsel may be heard, plaintiffs, Yantai North Andre Juice, Inc. and Yantai North Andre Juice

Co., Ltd. (collectively, "Yantai" or "plaintiffs"), by and through their counsel, McCusker,

Anselmi, Rosen, Carvelli and Walsh, P.A., shall move before the Honorable William J.

Martini, of the United States District Court for the District of New Jersey, located at 50

Walnut Street, Newark , New Jersey 07102, for entry of an Order dismissing defendants'

counterclaims, plus costs and fees associated with the prosecution of the within motion.

dismissing defendants' counterclaims, plus costs and fees associated with the prosecution of the within motion.

    **PLEASE TAKE FURTHER NOTICE** that in support of its motion, Yantai shall rely on the accompanying Memorandum of Law, and Statement of Undisputed Material Facts, with annexed exhibits.

    **PLEASE TAKE FURTHER NOTICE** that oral argument is requested if timely opposition is filed.

    **PLEASE TAKE FURTHER NOTICE** that a proposed form of Order is enclosed herewith.

> **McCUSKER, ANSELMI, ROSEN,**
> **CARVELLI & WALSH, P.A.**
> 127 Main Street
> Chatham, New Jersey 07928
> (973) 635-6300
> Attorneys for Plaintiffs,
> Yantai North Andre Juice, Co., Ltd. and
> Yantai North Andre Juice, Inc.

Dated: June 10, 2005

By: ANDREW E. ANSELMI

## CERTIFICATION OF SERVICE

     **I HEREBY CERTIFY** that I today caused an original plus two (2) copies of the cover letter serving the within Notice of Motion to Dismiss, Statement of Undisputed Material Facts, Memorandum of Law, Declaration of Titus Yung with annexed exhibits, and Proposed Form of Order to be served via electronic filing upon the Clerk of the United States District Court for the District of New Jersey, Newark Vicinage;

     **I FURTHER CERTIFY** that I today caused a copy of the above-referenced cover letter to be served via electronic filing and overnight carrier upon the Honorable William J. Martini, U.S.D.J. and copies to be delivered via Facsimile and Federal Express upon the following counsel of record:

**William D'Annunzio, Esq.**
**Budd Larner, P.C.**
**150 John F. Kennedy Parkway, CN 1000**
**Short Hills, New Jersey 07078-0999**

                              **McCUSKER, ANSELMI, ROSEN,**
                              **CARVELLI & WALSH, P.A.**
                              127 Main Street
                              Chatham, New Jersey 07928
                              (973) 635-6300
                              Attorneys for Plaintiffs,
                              Yantai North Andre Juice, Co., Ltd. and
                              Yantai North Andre Juice, Inc.

               By: _____
                      ANDREW E. ANSELMI

Dated: June 10, 2005

Andrew E. Anselmi, Esq. (AA 1768)
**McCUSKER, ANSELMI, ROSEN,**
   **CARVELLI & WALSH,  P.A.**
127 Main Street
Chatham, New Jersey 07928
(973) 635-6300
Attorneys for Plaintiffs,
Yantai North Andre Juice, Co., Ltd. and
Yantai North Andre Juice, Inc.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
NEWARK VICINAGE

| | |
|---|---|
| YANTAI NORTH ANDRE JUICE CO., LTD. and<br>YANTAI NORTH ANDRE JUICE, INC.,<br><br>       Plaintiffs,<br><br>       v.<br><br>ARTHUR KUPPERMAN, PAULETTE KRELMAN,<br>E. ROSS BROWNE, SR.; PGB INTERNATIONAL,<br>f/k/a and/or a/k/a PITTRA G.B. INTERNATIONAL,<br>f/k/a and/or a/k/a PITTRA-CAMERICAN f/k/a and/or<br>a/k/a, PITTRA, INC., G.B INTERNATIONAL, XYZ<br>CORPORATIONS 1-10, and JOHN DOES 1-10,<br><br>       Defendants. | Civil Action No. 05-1049 (WJM)<br><br>**ORDER GRANTING SUMMARY**<br>**JUDGMENT DISMISSING**<br>**COUNTERCLAIMS** |

**THIS MATTER** having been brought before the court by McCusker, Anselmi, Rosen, Carvelli & Walsh, P.A. (Jonathan T.K. Cohen, Esq. appearing), attorneys for plaintiffs Yantai North Andre Juice, Inc. and Yantai North Andre Juice Co., Ltd., ("Yantai" or "plaintiffs"), on motion to dismiss defendants' counterclaims; said motion being on notice to William D'Annunzio, Esq.; the Court having considered the submissions of counsel and the arguments contained therein, and for good cause otherwise appearing;

IT IS ON THIS _____ DAY OF _____, 2005;

ORDERED AND ADJUDGED that the motion of plaintiffs Yantai North Andre

Juice, Inc. and Yantai North Andre Juice Co., Ltd. to dismiss defendants' counterclaims

is hereby granted in its entirety;

AND IT IS FURTHER ORDERED that judgment is hereby entered in favor of

plaintiffs and against defendants, dismissing defendants' counterclaims with prejudice;

AND IT IS FURTHER ORDERED that judgment for attorney's fees is hereby

entered in the amount of $_____.

AND IT IS FURTHER ORDERED that a copy of this Order shall be served on

all counsel of record within seven (7) days of receipt hereof.

_____
Honorable William J. Martini,
United States District Judge