Andrew E. Anselmi, Esq. (AA 1768)
**McCUSKER, ANSELMI, ROSEN,**
   **CARVELLI & WALSH, P.A.**
127 Main Street
Chatham, New Jersey 07928
(973) 635-6300
Attorneys for Plaintiffs,
Yantai North Andre Juice, Co., Ltd. and
Yantai North Andre Juice, Inc.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| YANTAI NORTH ANDRE JUICE CO., LTD. and YANTAI NORTH ANDRE JUICE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ARTHUR KUPPERMAN, PAULETTE KRELMAN, E. ROSS BROWNE, SR.; PGB INTERNATIONAL, f/k/a and/or a/k/a PITTRA INTERNATIONAL, f/k/a and/or a/k/a PITTRA-CAMERICAN f/k/a and/or a/k/a, PITTRA, INC., G.B INTERNATIONAL, XYZ CORPORATIONS 1-10, and JOHN DOES 1-10, <br><br> Defendants. | Civil Action No. 05-1049 (WJM) <br><br><br> **FILED ELECTRONICALLY** |

---

**REPLY MEMORANDUM OF LAW OF PLAINTIFFS, YANTAI NORTH ANDRE JUICE CO., LTD. AND YANTAI NORTH ANDRE JUICE, INC., IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PITTRA'S COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 56**

---

Of Counsel:
   Andrew E. Anselmi, Esq.
   Jonathan T.K. Cohen, Esq.
On the Brief:
   Andrew E. Anselmi, Esq.
   Jonathan T.K. Cohen, Esq.
   Edward A. Sturchio, Jr., Esq.              Dated: August 19, 2005

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

LEGAL ARGUMENT .............................................................................................................. 2

Point I
RES JUDICATA IS APPLICABLE TO THE INSTANT MATTER,
AND SERVES TO BAR PITTRA'S COUNTERCLAIMS ...................................................... 4

Point II
PITTRA'S COUNTERCLAIMS ARE PRECLUDED AS
COMPULSORY COUNTERCLAIMS BY FED.R.CIV.P.13
AND NEW JERSEY'S ENTIRE CONTROVERSY DOCTRINE ........................................... 7

    A.    New Jersey's Entire Controversy Doctrine is Applicable to the Instant
             Action, so as to Bar Pittra's Counterclaims .............................................................. 8

    B.    Fed.R.Civ.P. 13 Bars Pittra's Counterclaims as Compulsory
             Counterclaims Omitted From the Parties' Prior Litigation ..................................... 10

Point III
THE TERMS OF THREE FORBEARANCE AGREEMENTS
PRECLUDE PITTRA FROM ASSERTING NEW CLAIMS ................................................ 11

Point IV
IN ADDITION TO BEING BARRED UNDER THE ABOVE
PRECLUSIONARY GROUNDS, PITTRA HAS FAILED TO MEET
MINIMUM PLEADING STANDARDS UNDER THE NEW JERSEY
FRANCHISE PRACTICES ACT ........................................................................................... 12

CONCLUSION ....................................................................................................................... 14

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Churchill v. Star Enterprises*, 183 F.3d 368 (3rd Cir. 1999) ................................................. 4

*Dowdell v. University of Medicine and Dentistry of New Jersey*, 94 F.Supp.2d 527 (D.N.J. 2000) ................................................................................................................ 8

*Eastern Minerals and Chemical Co. v. Mahan*, 225 F.3d 330, 44 Collier Bankr. Cas.2d 1303 (3rd Cir. 2000) ............................................................................................... 6, 7

*Gasperini v. center for Humanities, Inc.*, 518 U.S. 415, 116 S.Ct. 2211, 135 L.ed.2d 659 (1996) .................................................................................................................. 8

*In re McMillan*, 579 F.2d 289 (3rd Cir. 1978) ................................................................... 6, 7

*Paramount Aviation Corp. v. Agusta*, 178 F.3d 132,137,138,142 (3rd Cir. 1999) .......... 8, 9

*Semtek International Inc. v. Lockheed Martin Corp., et al.*, 531 U.S. 497, 121 S.Ct. 1021,1028-1029 [149, L.Ed.2d 32] (2001) ............................................................. 8, 12

*Sutton v. Sutton*, 71 F.Supp.2d 383,389-390 (D.N.J. 1999) ............................................ 4, 6, 9

## FEDERAL RULES OF CIVIL PROCEDURE

Fed.R.Civ.P.13 ............................................................................................................... 10, 11, 12

## STATE STATUTES

N.J.S.A.25:2-20, et seq. .................................................................................................... 9, 12, 13

N.J.S.A. 56:10-1et seq. ..................................................................................................... 9, 12, 13

## PRELIMINARY STATEMENT

Plaintiffs Yantai North Andre Juice, Inc. and Yantai North Andre Juice Co., Ltd. (collectively, "Yantai" or "plaintiffs") submit this reply memorandum of law in further support of their motion for summary judgment dismissing the counterclaims of Pittra G.B. International, Inc. ("Pittra").

Pittra contends that res judicata is not applicable since their counterclaims were not actually litigated in the first suit, and are not part of the same cause of action as in the prior suit. This argument is without merit. Pittra now attempts to oppose dismissal based on a tortured distinction between a counterclaim related to an alleged exclusivity agreement to sell juice concentrate, and an allegedly wholly separate obligation to pay monies owed for the purchase of apple juice concentrate. Pittra's counterclaims are designed to serve as an offset to the undisputable monetary obligation to pay for the delivery of juice concentrate. This obligation has been memorialized in a judgment and three successive forbearance agreements. Pittra nonetheless argues that their counterclaims relate to entirely distinct issues. This argument defies common sense and applicable legal authority.

The right to set-off obligations for the payment of apple juice concentrate based on an alleged exclusivity agreement certainly relates to the relationship between Yantai and the defendants to sell apple juice concentrate. The relationship between Yantai and the defendants relates solely to the sale of apple juice concentrate, and attendant relationships related to the payment of such apple juice concentrate. The parties did not deal with each other with respect to another area of business, or even any different type of food product.

1

Res judicata bars not only litigated claims, but those that could have been litigated as well. This includes situations where a judgment debtor attempts to assert counterclaims in a second action which are related to a prior action. Pittra failed to defend the first action, never raised the alleged amounts due in negotiating three Forbearance Agreements, and never instituted a separate independent suit based on the new allegations. The newly asserted counterclaims were only first introduced in response to a second litigation attempting to prosecute fraud and fraudulent transfers that the defendants appear to have initiated to prevent collection on the Judgment amount due.

Following the entry of the November 2002 Judgment, the judgment debtor Pittra, and defendant Kupperman, repeatedly acknowledged and confirmed the debt due Yantai through the three Forbearance Agreements negotiated and executed by the parties over the course of seven months following the entry of Judgment. These Forbearance Agreements acknowledged that there existed certain limited and specified potential <u>claims</u> or <u>offsets</u> comprised of amounts allegedly due to Pittra from Yantai that would effectively reduce the Judgment amount. The newly alleged offsets regarding an alleged exclusivity agreement were never identified at any prior time, when they certainly should have been.

Based upon the foregoing, and the additional legal arguments stated below, this Court should grant Yantai's motion for summary judgment against all defendants, dismissing their counterclaims with prejudice.

## LEGAL ARGUMENT

In support of Pittra's argument that res judicata does not bar its counterclaims, Pittra contends that its counterclaims are unrelated to Yantai's initial action. However,

2

courts have interpreted res judicata to include claims which could have been asserted, but were not. Moreover, Pittra's counterclaims are sufficiently related to the first suit to make res judicata applicable. Pittra's new counterclaims serve as an offset for payments of apple juice concentrate, the same payments that Yantai sought, which were reduced to Judgment, and which were admitted in three Forbearance Agreements.

Pittra improperly relies upon two bankruptcy matters with underlying state-court judgments. The opinions themselves expressly recognize the "unique circumstances" and "special problems" that occur when determining the claim preclusive effect of prior judgments in the bankruptcy context.

Pittra's second defense to Yantai's entire controversy arguments is equally without merit. The entire controversy doctrine bars Pittra's counterclaims, even if they constitute a separate and independently cognizable cause of action. Federal courts sitting in diversity apply state substantive law not at odds with federal interests. The entire controversy doctrine is a matter of state substantive law, not incompatible with a federal interest to prevent piecemeal litigation, traditional party, and claim joinder requirements.

Pittra's counterclaims under the New Jersey Franchise Practices Act, and Yantai's fraud and fraudulent transfer allegations pursuant to the New Jersey Fraudulent Transfer Act, both involve state substantive law embodied in the respective statutes. It is appropriate therefore for this Court to apply the entire controversy doctrine to dismiss Pittra's counterclaims that were never raised in Yantai's initial litigation.

Although defendants argue otherwise, their counterclaims are also barred by Fed.R.Civ.P.13 as compulsory counterclaims omitted from the parties' prior litigation. Never did Pittra even mention the allegations contained in its new counterclaims while

3

negotiating a limited right to pursue several potential offsets over the course of several months.

The three Forbearance Agreements also preclude Pittra's counterclaims. They each specifically enumerate potential offsets that were thoroughly negotiated between the parties' counsel over the course of many months. They detail amounts allegedly due from Yantai to Pittra. However, nowhere do they mention any alleged amounts due or set-off from an alleged breach of an exclusivity agreement. This was the time to discuss such claims and offsets, to the extent they might exist.

### Point I

### RES JUDICATA IS APPLICABLE TO THE INSTANT MATTER, AND SERVES TO BAR PITTRA'S COUNTERCLAIMS

Based upon their misconstruction of Sutton v. Sutton, 71 F.Supp.2d 383, 389 (D.N.J. 1999), and two bankruptcy decisions, defendants contend that res judicata is not applicable to this matter. Defendants assert that res judicata is inapplicable because their counterclaims were not litigated as part of "the same cause of action" as the original Yantai action filed in 2002, which gave rise to Yantai's Judgment. There is no precise definition of 'cause of action' for claim preclusion purposes. Courts, however, generally take a broad view of 'cause of action.' Churchill v. Star Enters., 183 F.3d 184, 194 (3rd Cir. 1999).

Pittra accepted and confirmed the amount it owed to Yantai. Over the course of seven months following the entry of Yantai's Judgment, the parties negotiated several specified subject areas that could constitute potential offsets to Yantai's acknowledged claims. During these extensive negotiations, and the drafting and re-drafting of three successive Forbearance Agreements, Pittra never raised any of the presently asserted

4

claims that would allegedly now qualify as new offsets to the amount owed to Yantai. Instead, defendants began making payments to Yantai under the Judgment, and in accordance with the Forbearance Agreements.

Curiously, Pittra never instituted any independent suit against Yantai for the two and a half years following the Yantai Judgment. It was only in response to Yantai's fraudulent transfer and fraud-based action that any claims by Pittra were alleged against Yantai that might potentially reduce the sum-certain amount owed under the Judgment.

Yantai gave Pittra numerous opportunities to work out an arrangement and forbearance acceptable to both Yantai and Pittra. Based upon the lengthy negotiations, Pittra was given an accommodation to which it agreed. The terms of forbearance were fundamental to the litigation. The proper forum for Pittra's present counterclaims was in the initial litigation, not here.

Defendants state that they are not challenging the validity of the judgment. Opp. Br. p. 10. However, they actually are challenging the Judgment by raising alleged counterclaims and offsets never raised in response to the Judgment or three successive Forbearance Agreements. If allowed to prosecute their counterclaims, defendants would try to eliminate, reduce or offset the amount owed under Yantai's Judgment. This is certainly the equivalent of challenging the Judgment. Defendants had this opportunity in the first litigation and failed to do so. They also had ample opportunity to payoff the Judgment, without the necessity of another suit. Pittra's counterclaims therefore constitute omitted defenses to Yantai's first action. They also attempt to foster piecemeal litigation by interjecting allegations that defendants previously failed to raise.

5

If the defendants wanted to preserve a possible off-set of Pittra's obligations for an alleged exclusivity agreement related to the sale of apple juice concentrate, the time to reference such a "possible off-set and/or claims," was in response to the Complaint, and/or in the initial Forbearance Agreement, the Second Forbearance Agreement, and/or the Third Forbearance Agreement.

The Court in Sutton emphasized that "res judicata prohibits a party from reopening and relitigating issues that were <u>or could have been decided</u> in a previous case involving the same parties arising out of the same transaction." Sutton, 71 F.Supp.2d at 389 (emphasis added). This recognition should certainly include situations where a defendant knowing fails to defend an action and then negotiates repeated requests to have plaintiff forbear from enforcing its full rights under a $1.169 million Judgment.

Allowing the instant counterclaims of defendants to proceed would be tantamount to providing defendants a non-permissible "second bite at the apple," pun intended. Had Pittra actually paid the Judgment as it repeatedly promised to do, it would not even have had the opportunity to file the counterclaims against Yantai, absent a separate suit, which it never filed despite two years passing since the entry of the Judgment.

Defendants also rely upon Eastern Minerals and Chemical Co. v. Mahan, 225 F.3d 330, 44 Collier Bankr. Cas.2d 1303 (3rd Cir. 2000) and In re McMillan, 579 F.2d 289 (3rd Cir. 1978). Defendants cite to these two bankruptcy cases, despite the fact they both stem from underlying state-court actions, a characteristic which defendants themselves argue should diminish their precedential value for purposes of the instant matter. See Opp. Br. p. 12.

Contrary to the matters now presented to this Court, In re McMillan concerned specific narrow issues and specific facts central to the issue of dischargability under the Bankruptcy Code, and the "major federal policy of granting exceptions to discharge only in certain circumstances." 579 F.2d at 293. In arguing against dischargability, the bankrupt's creditor attempted to offer the facts alleged in the underlying action as true for purposes of proving it's second set of claims in the bankruptcy litigation. Id.

In Eastern Minerals, 225 F.3d 330, the bankrupt's creditor brought a state-court action to pierce the corporate veil in order to collect on its settled bankruptcy claim. Following removal and appeal, the Third Circuit Court of Appeals noted that "claim preclusion is complicated in this case not only because the instant claim involves a multifaceted factual scenario and extensive course of events, but also because the prior litigation involved an expansive and complex chapter 11 bankruptcy case." Eastern Minerals, 225 F.3d at 337. This complexity is not similar to the framework of Yantai's action presently before the Court. Yantai is simply asserting that Pittra's counterclaims, in their entirety, are barred on res judicata grounds. The 2002 Complaint addressed the same apple juice concentrate relationship now addressed in Pittra's Counterclaim. The ongoing business interactions between Yantai and Pittra regarding purchases and sales of juice concentrate were central issues to the prior litigation.

### Point II

### PITTRA'S COUNTERCLAIMS ARE PRECLUDED AS COMPULSORY COUNTERCLAIMS BY FED.R.CIV.P.13 AND NEW JERSEY'S ENTIRE CONTROVERSY DOCTRINE

Pittra's contention that New Jersey's entire controversy doctrine does not apply to this matter is also without merit. Since state substantive law is at issue, it is entirely

appropriate for this Court to apply the entire controversy doctrine to dismiss Pittra's counterclaims that were never raised in Yantai's initial litigation.

A. **New Jersey's Entire Controversy Doctrine is Applicable to the Instant Action, so as to Bar Pittra's Counterclaims**

Pittra relies heavily upon Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 139 (3rd Cir. 1999) to argue that the entire controversy doctrine is inapplicable. However, Pittra's assessment of this case is misleading. Semtek International Inc. v. Lockheed Martin Corp., et al., 531 U.S. 497, 508, 121 S.Ct. 1021, 1028, 149, L.Ed.2d 32 (2001), which was decided by the United States Supreme Court, two years after Paramount, indicates that the initial starting point for this Court's analysis must be that state claim preclusion rules apply. The Supreme Court in Semtek stated:

> Since state, rather than federal, substantive law is at issue, there is no need for a uniform federal rule. And indeed, nationwide uniformity in the substance of the matter is better served by having the same claim-preclusive rule (the state rule) apply whether the dismissal has been ordered by a state or federal court. This is, it seems to us, a classic case for adopting, as the federally prescribed rule of decision, the law that would be applied by state courts in the State in which the federal diversity court sits.

Semtek, 531 U.S. at 508.

It is well settled that federal district courts sitting in diversity apply state substantive law, and federal procedural law, unless the two are incompatible. Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996). New Jersey's entire controversy doctrine is a part of that State's substantive law that is not incompatible with federal interests. Dowdell v. University of Medicine and Dentistry of New Jersey, 94 F.Supp.2d 527 (D.N.J. 2000); Paramount, 178 F.3d at 138 (acknowledging the substantive character of the state preclusion law). Moreover, Pittra's

8

counterclaims, as well as Yantai's fraudulent transfer claims, are rooted in state statutory law.

Yantai's instant complaint alleges violations of the New Jersey Fraudulent Transfer Act (N.J.S.A. 25:2-20, et seq.) ("NJFTA") and various common law fraud claims. In turn, Pittra alleges state breach of contract claims and violations of the New Jersey Franchise Practices Act (N.J.S.A. 56:10-1, et seq.)("NJFPA"). Both of these statutes constitute state substantive law.

The entire controversy doctrine is also compatible with the federal interests of preventing piecemeal litigation and traditional party and claim joinder requirements. New Jersey's entire controversy doctrine "encompasses traditional concepts of claims joinder, as well as party joinder..." Sutton, 71 F.Supp.2d at 390.

Under the entire controversy doctrine, a party cannot "withhold part of a controversy for separate later litigation, <u>even when the withheld component is a separate and independently cognizable cause of action</u>." Paramount, 178 F.3d at 137, (emphasis added). Pittra had ample opportunity to assert opposing claims against Yantai, in connection with three separate Forbearance Agreements or in response to Yantai's initial complaint, in the fall of 2002. Instead, Pittra asserted no defenses or counterclaims against Yantai in that suit. Pittra chose to not answer Yantai's 2002 Complaint. Pittra also chose to repeatedly concede Yantai's Judgment and claims in three successive Forbearance Agreements, in each instance, asking Yantai to forbear from certain collection actions in exchange for clear admissions of liability, and certain possible offsets for only certain specified issues. Pittra and Kupperman then began paying down

9

the amount due. Summary judgment dismissing Pittra's counterclaims is therefore warranted based upon New Jersey's entire controversy doctrine.

### B. Fed.R.Civ.P. 13 Bars Pittra's Counterclaims as Compulsory Counterclaims Omitted From the Parties' Prior Litigation

Even if the Court determines that the entire controversy doctrine does not bar Pittra's untimely counterclaims, they are barred by Fed.R.Civ.P.13 as compulsory counterclaims omitted from the parties' prior litigation before this Court. Defendants contend that they are not barred from now bringing their state law counterclaims, after failing to raise them in the first action between the parties, since there is no "logical relationship" between their claims and Yantai's initial allegations in plaintiffs' prior complaint. Opp. Br. p. 14-15. This is obviously not true.

Yantai did business with Mr. Kupperman and his affiliate companies for several years. At the heart of the initial litigation, and particularly the three Forbearance Agreements negotiated and executed with Pittra and Mr. Kupperman, was the ongoing business relationship between the parties. While Pittra did not file any counterclaims to the prior action, they did negotiate, with the aid of counsel, certain carve outs from the Forbearance Agreements related to amounts allegedly due to Pittra from Yantai that would otherwise offset the amount of the Judgment. Pittra, however, never raised any of the issues now alleged in their new counterclaims. Nor did Pittra ever seek to file an independent action against Yantai for two and a half years since the entry of the Judgment.

The same defendants or their privities have been named in both litigations. Further, Yantai will likely rely upon documents related to the parties' other action, particularly the same contractual-related transactions, at least some of the thousands of

10

pages of documents produced in post-judgment collection efforts, and the Forbearance Agreements referenced repeatedly herein. Pittra's new counterclaims therefore constitute compulsory counterclaims that are now barred pursuant to Fed. R.Civ.P. 13. Dismissal is therefore appropriate pursuant to plaintiffs' current motion now pending before the Court.

### Point III

### THE TERMS OF THREE FORBEARANCE AGREEMENTS PRECLUDE PITTRA FROM ASSERTING NEW CLAIMS

Contrary to defendants' contention, Yantai has not enlarged the scope of the Forbearance Agreements. Pittra contends that it entered into an exclusivity agreement with Yantai in 2001, and that Yantai breached said alleged exclusivity agreement in 2002.

After the November 2002 Judgment was entered and Pittra sought to have Yantai forbear from certain collection efforts, Pittra expressly acknowledged the existence and amount of debt owed to Yantai in each of the three (3) Forbearance Agreements. The Forbearance Agreements each contained specific stipulated background provisions detailing the amount of monies owed by Pittra to Yantai, pursuant to Yantai's rights under the November 2002 Judgment.

The first two Forbearance Agreements specifically stated that defendant's obligations to Pittra of $1,169,000 were subject to "maximum possible off-sets and/or claims by Pittra" of $50,000 for specification issues for goods received and off-sets and/or claims of a maximum amount of $100,000 related to a possible accounting dispute. This language is clear. These two exceptions, and only these two exceptions, were preserved as possible areas to reduce or set-off the amounts owed under the Judgments.

11

Nowhere do any of the three Forbearance Agreements make mention of any claims relating to an alleged "exclusivity agreement," or Yantai's alleged breach thereof. The only rights allowed under the Forbearance Agreements to the judgment debtor Pittra were limited to the specified potential setoffs. If allowed to proceed with its newly conceived counterclaims, Pittra could effectively negate the validity of the November 2002 Judgment and the three separate Forbearance Agreements. This result would be in direct contravention of the language of the Forbearance Agreements, the legal purpose of the Forbearance Agreements, and the preclusive legal doctrine discussed above.

### Point IV

### IN ADDITION TO BEING BARRED UNDER THE ABOVE PRECLUSIONARY GROUNDS, PITTRA HAS FAILED TO MEET MINIMUM PLEADING STANDARDS REQUIRED UNDER THE NEW JERSEY FRANCHISE PRACTICES ACT

Even if not dismissed due to res judicata, the entire controversy doctrine, Fed. R.Civ.P. 13, or the Forbearance Agreements, Pittra's claim under the NJFPA do not even allege the requisite elements to form a claim under the NJFPA. While Pittra has repeatedly stated that there exists a written exclusivity agreement, it has failed to even produce any evidence that the parties actually entered into a written agreement. Pittra never even furnished a copy of the alleged exclusivity agreement in its opposition pleadings.

A cursory review of Pittra's claims under the NJFPA reveals that it has not plead the requisite elements to establish a prima facie case under N.J.S.A. 56:10-1, et seq. The NJFPA applies only to:

> a franchise (1) the performance of which contemplates or requires the franchisee to establish or maintain a place of

12

> business within the State of New Jersey, or (2) where gross sales of products or services between the franchisor and franchisee covered by such franchise have exceeded $35,000.00 for the 12 months preceding the institution of suit pursuant to this act, and (3) where more than 20% of the franchisee's gross sales are intended to be or are derived from such franchise;

N.J.S.A. 56:10-4(a).

Pittra does not attempt to allege a single element of this section of the statute in its counterclaim. The counterclaim barely even alleges that Pittra was a franchise, absent a single conclusory allegation stating so. A "franchise" under the FPA is defined as

> a <u>written</u> arrangement for a definite or indefinite period, in which a person grants to another person a license to use a trade name, trade mark, service mark, or related characteristics, and in which there is a community of interest in the marketing of goods or services at wholesale, retail, by lease, agreement, or otherwise.

N.J.S.A. 56:10-3(a) (emphasis added).

The four corners of Pittra's counterclaim fail to allege any other substantive element of the statute. Despite conclusory allegations in its counterclaim, and in Mr. Kupperman's declaration, Pittra has made no allegation that a license was granted. Likewise, Pittra has failed to allege that there exists a community of interest as required under N.J.S.A. 56:10-3(a). On its face, Pittra's counterclaim would not survive 12(b)(6) scrutiny, since it fails to allege several material elements required under N.J.S.A. 56:10-3 and N.J.S.A. 56:10-4 to prove its claim. Accordingly, dismissal of Pittra's counterclaim under the NJFPA is appropriate, in addition to dismissal for all of the preclusionary reasons stated above.

13

## **CONCLUSION**

For all of the reasons set forth above, and in its original moving papers, Plaintiff Yantai respectfully requests that the Court grant its motion for summary judgment against defendants' counterclaim, dismissing all four counts of the counterclaims with prejudice.

Respectfully submitted,

JONATHAN T.K. COHEN